# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN BALLANDBY,　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
-vs-　　　　　　　　　　　　　　　)　　Case No. CIV-19-0123-F
　　　　　　　　　　　　　　　　　)
ANNE L. PRECYTHE, personally,　　 )
but acting in capacity as Director of　 )
the Missouri Department of　　　　 )
Corrections, et al.,　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

## ORDER

### I. Introduction

This action, brought by Sean Ballandby, alleges a federal claim under 42 U.S.C. §1983 and certain state-law torts (false imprisonment and negligence) against officials located in Oklahoma or Missouri. Briefly stated, the federal claim alleges a deprivation of plaintiff's argued-for right to return to Oklahoma from Missouri under the Interstate Agreement on Detainers (IAD) Act.[1] The state-law claims allege that defendants failed in their duties, including their duty to return plaintiff to Oklahoma and their duty to credit plaintiff's Oklahoma sentence with time served in Missouri on a Missouri sentence. The amended complaint alleges that due to defendants' actions, plaintiff was incarcerated for at least 150 extra days.

---

[1] In 1970, Congress entered into the Interstate Agreement on Detainers on behalf of the federal government and the District of Columbia. 18 U.S.C. Appx. Art. III. Both Oklahoma and Missouri have entered into the IAD. 22 O.S. 2011 §§ 1345-1348; MO. ST. 217.490

All five defendants move for dismissal.  This order addresses the motions in the following sequence.

(1).    Joe Allbaugh, Director of the Oklahoma Department of Corrections (Oklahoma DOC).  Doc. no. 36.[2]

(2).    Mike Waters, Sheriff of Pawnee County, Oklahoma.  Doc. no. 35.[3]

(3).    Anne L. Precythe, Director of the Missouri Department of Corrections (Missouri DOC).  Doc. no. 38.[4]

(4).    Eric Schmitt, Attorney General of the State of Missouri.  Doc. no. 37.[5]

(5).    Christopher Wade, Prosecuting Attorney for Douglas County, Missouri.  Doc. no. 31, with supporting brief at doc. no. 32.[6]

For the reasons set out in this order, all motions other than Precythe's motion will be granted.  The Precythe motion will be granted in part and reserved in part, to permit plaintiff an opportunity to seek transfer of the claims against Precythe if plaintiff wishes to do so.

## II.  Standards

The motions are brought under Rule 12(b)(1) and Rule 12(b)(6), Fed. R. Civ. P.  No moving briefs refer to Rule 12(b)(2), but the lack of personal jurisdiction

---

[2] Response brief doc. no. 41.  Reply brief doc. no. 46.

[3] Response brief doc. no. 40.  Reply brief doc. no. 44.

[4] Response brief doc. no. 43.  No reply brief.

[5] Response brief doc. no. 42.  Reply brief doc. no. 45.

[6] Response brief doc. no. 39.  No reply brief.

arguments are considered under that rule. Some motions mention Rule 8(a)(2), Fed. R. Civ. P., but this order dismisses no claims under Rule 8.

Rule 12(b)(1)

In passing on a motion to dismiss, whether bringing a facial attack on jurisdiction under Rule 12(b)(1) or whether challenging the complaint for failure to state a cause of action under Rule 12(b)(6), the non-movant enjoys similar safeguards; the allegations of the complaint should be construed favorably to the pleader and the court will not look beyond the face of the complaint to determine jurisdiction. *See*, *e.g.*, Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994) (non-moving party receives the same protection with respect to 12(b)(1) as it would defending against a motion brought under Rule 12(b)(6), quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)); 2 Moore's Federal Practice, §12.30[4] (Matthew Bender 3d ed.).

Rule 12(b)(6)

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by

3

factual allegations. *See generally,* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-79 (2009).
When there are well-pleaded factual allegations, a court should assume their veracity
and then determine whether they plausibly give rise to an entitlement to relief. *Id*.

Rule 12(b)(2)

Plaintiff has the burden of establishing personal jurisdiction over a defendant.
<u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995). In the preliminary
stages of litigation, plaintiff's burden is light. *Id*. Where, as here, there has been no
evidentiary hearing, plaintiff need only make a *prima facie* showing of personal
jurisdiction to defeat the motion. *Id*. Plaintiff may make the *prima facie* showing
by demonstrating, via affidavit or other written materials, facts which, if true, would
support jurisdiction over the defendant. <u>OMI Holdings, Inc. v. Royal Ins. Co. of
Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998). If the parties present conflicting
affidavits, all factual disputes must be resolved in the plaintiff's favor and the
plaintiff's *prima facie* showing is sufficient notwithstanding the contrary
presentation by the moving party. <u>Wenz</u> at 1505. The allegations in the complaint
must be taken as true to the extent they are uncontroverted by the defendant's
affidavits. *Id*. However, only the well pled facts of plaintiff's complaint, as
distinguished from merely conclusory allegations, must be accepted as true. *Id.*

The exercise of jurisdiction over a nonresident defendant comports with due
process so long as there exist minimum contacts between the defendant and the
forum state. <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1217-18 (10th Cir. 2006).[7] The
minimum contacts necessary for specific[8] personal jurisdiction may be established

---

[7] Oklahoma's long-arm statute extends the jurisdiction of its courts to the full extent of the Due
Process Clause of the Fourteenth Amendment. <u>Conoco, Inc. v. Agrico Chemical Co.</u>, 115 P.3d
829, 834 (Okla. 2004).

[8] Plaintiff's response briefs assert specific jurisdiction. (The amended complaint alleges no basis
for general jurisdiction, and plaintiff does not contend otherwise.)

where the defendant has purposefully directed his activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum. *Id.* at 1218.

### III. <u>No Official Capacity Claims</u>

The court determines, for a number of reasons, that no official capacity claims are alleged in the amended complaint. <u>First</u>, the caption of the amended complaint names each defendant "<u>personally</u>, but acting in capacity as [their title]." A claim alleged against a defendant "personally" is generally understood as a claim which asserts that the defendant is personally liable, *i.e.* liable in their personal (individual) capacity. By contrast, the caption of the *original* complaint expressly named each defendant in his or her "official capacity," a phrase which does not appear in the amended version of the complaint. <u>Second</u>, the amended complaint was filed by plaintiff after certain defendants moved to dismiss, arguing that the official capacity claims in the original version of the complaint were barred under the Eleventh Amendment because such official capacity claims are actually claims against a state. The amended complaint, naming defendants "personally," was filed in response to these Eleventh Amendment arguments. This sequence of events suggests no official capacity claims, which would have again triggered Eleventh Amendment defenses, were intended. <u>Third</u>, the amended complaint asserts jurisdiction under 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1332 (diversity). Diversity jurisdiction, however, would be unavailable if claims were alleged against state officials in their official capacities. This is because such official capacity claims are claims against the state, and states are not citizens for diversity purposes. <u>Fourth</u>, plaintiffs' response briefs repeatedly characterize his claims as individual capacity claims. To cite just one example here, plaintiff argues that "Plaintiff's actual claims are against

the Defendant [Precythe] in her individual capacity," so that the Eleventh Amendment is no bar. Doc. no. 43, p. 4.

Thus, although the manner in which plaintiff labels his claims does not always control, in the circumstances of this case it is clear to the court that only individual capacity claims are alleged in the amended complaint. Accordingly, from this point forward, when this order refers to claims against the defendants, it refers only to individual capacity claims unless otherwise stated.

IV. <u>Factual Allegations</u>

As shown by the allegations reviewed below, the central allegations are that plaintiff was not returned to Oklahoma after he entered a plea in Missouri (despite having filed a habeas petition in Missouri, seeking his return to Oklahoma); and that once plaintiff arrived back in Oklahoma, Oklahoma did not credit him for time served in Missouri.

On April 29, 2016, plaintiff entered a plea of guilty in Pawnee County, Oklahoma, to a DUI charge, as part of a negotiated plea. He received a five-year suspended sentence to be supervised by the Oklahoma DOC. Doc. no. 28, ¶13.

During that probationary period, on May 27, 2016, plaintiff was charged in Missouri for possession of a controlled dangerous substance (marijuana). *Id*., ¶ 14.

On February 7, 2017, while in the Douglas[9] County, Missouri jail (apparently awaiting trial on the possession charge), plaintiff signed an extradition release to the State of Oklahoma. *Id*., ¶ 15.

The extradition release was then sent to Oklahoma along with the warrant of arrest from Douglas County, Missouri, at which time the State of Oklahoma became aware of the pending charges in Missouri. *Id*., ¶ 16.

---

[9] Some papers refer to Douglass County. This order corrects all spellings to Douglas County.

Plaintiff was subsequently picked up from the jail in Douglas County, Missouri, and transported to the Pawnee County jail in Oklahoma, to face revocation of his suspended DUI sentence. *Id*., ¶ 17.

On February 24, 2017, plaintiff appeared in state court in Pawnee County, Oklahoma. That court revoked two years of his suspended sentence with those two years to be served in the custody of the Oklahoma DOC, and with the remainder of the sentence suspended. *Id*., ¶ 18. A minute order entered on that date provides that plaintiff is to be remanded to the custody of Oklahoma DOC "ASAP." *Id*., ¶19. There is no allegation (and plaintiff's briefs do not contend) that the Oklahoma sentence stated it was to run concurrently with any Missouri sentence that might be entered. Nor is there any allegation (and plaintiff's briefs do not contend) that the Oklahoma court ordered that plaintiff should receive credit on his Oklahoma sentence for any time served in Missouri.

Following his appearance in state court in Pawnee County, Oklahoma, plaintiff was in the custody of the Pawnee County Sheriff (defendant Waters), who plaintiff alleges was acting as a "holding agent" for Oklahoma DOC while plaintiff awaited transport to an Oklahoma DOC facility. *Id*., ¶ r.

On May 10, 2017, the state court in Douglas County, Missouri, issued a writ of habeas corpus ad prosequendum to secure plaintiff's appearance there on June 6, 2017, to face the pending Missouri charges. *Id*., ¶ 20. Sheriff Waters, acting as the agent of Oklahoma DOC, then transported plaintiff to Douglas County, Missouri, on temporary status pursuant to the Interstate Agreement on Detainers (IAD). *Id*., ¶ i.

On June 6, 2017, plaintiff entered a plea of guilty in the Missouri case and was given a two-year sentence which provided that it was to run concurrently with his Oklahoma sentence. *Id*., ¶ 21.

The writ of habeas corpus ad prosequendum which had brought plaintiff to Missouri was never released. *Id*., ¶ 22. Nor was plaintiff transported back to

Oklahoma following his guilty plea in Missouri. *Id.*, ¶ 22. Instead, plaintiff was taken to the Missouri DOC where he was received on June 15, 2017. *Id.*, ¶ 22.

On September 27, 2017, while in the custody of Missouri DOC, plaintiff filed a petition for a writ of habeas corpus. *Id.*, ¶ 23. The habeas case is Case No. 17CW-CV00934 in the Circuit Court of Callaway County, State of Missouri. *Id.*, ¶ 23, n.1. The petition asked the Missouri court to return petitioner (Mr. Ballandby) to Oklahoma to finish his Oklahoma sentence, with which his Missouri sentence was to run concurrently. *Id.*, ¶ 22. A response brief was filed in the habeas case by the Missouri Attorney General (*id.*, ¶ 23) on behalf of the respondent (Fulton Reception and Diagnostic Center, where the response brief states plaintiff was being held).[10] That response brief objected to relief. It argued, among other things, that plaintiff "will receive credit for every day of imprisonment he serves in Missouri towards his concurrent Oklahoma sentence" according to Oklahoma DOC policy. *Id.*, ¶23. (The amended complaint does not allege the disposition of plaintiff's petition for a writ of habeas corpus filed in Missouri, and the publicly available docket sheet reflects no ruling on the habeas petition.)

Plaintiff served time in Missouri DOC until he was paroled on February 7, 2018. *Id.*, ¶ 23. On that date, Missouri DOC did not return plaintiff to Oklahoma DOC but instead released plaintiff. *Id.* Plaintiff "finally arrived back in the Oklahoma DOC custody on February 21, 2018." *Id.* (Although the circumstances of plaintiff arriving back in Oklahoma DOC are not alleged, plaintiff's briefs indicate he returned to Oklahoma DOC on his own volition.)

Upon plaintiff's return to Oklahoma DOC from Missouri, "Plaintiff was informed by the Defendant's [Allbaugh's] agents that he would not receive credit

---

[10] The response brief filed in the Missouri habeas case (doc. no. 37-1 in this case) is a public record. Its authenticity is not in dispute, and it is central to the claims alleged in the amended complaint. Accordingly, the response brief (and the record in the habeas case) may be considered.

for his time served while he was on temporary status in Missouri." *Id.*, ¶ uuu. On May 30, 2018, plaintiff filed a grievance while in the custody of Oklahoma DOC (apparently complaining that his time served in Missouri was not being credited on his Oklahoma sentence). *Id.*, ¶ 24. Plaintiff's grievance was denied. *Id.* As grounds for the denial, plaintiff was informed that "once you left the state of Oklahoma the time in Missouri is not applied. You [had] not been received into the Department of Corrections [of Oklahoma] so you were not out on a writ with the [Oklahoma] Department of Corrections." *Id.* Accordingly, for the purpose of serving his Oklahoma sentence, plaintiff was not credited with time served in Missouri.

On August 16, 2018, plaintiff was released on parole from Oklahoma DOC. *Id.*, ¶ 25.

Plaintiff alleges that he served "no less than 150 days confined" as a result of "Defendants' failures to return his person to the sending state and for failures to release him on the writ." *Id.*, ¶ 26.

## V. Motions to Dismiss[11]

### (1). Joe Allbaugh, Director of Oklahoma DOC

The gist of the complaint against Allbaugh is that after plaintiff was released from Missouri's custody and arrived back in the custody of Oklahoma DOC, plaintiff was informed by Allbaugh's agents that plaintiff would not receive credit on his Oklahoma sentence for the time plaintiff had served while he was on temporary status in Missouri. Plaintiff's grievance over this issue, which was filed

---

[11] As will be seen, all § 1983 claims will be dismissed. As for the remaining state-law claims, it appears the parties are diverse. (Paragraphs 4 - 9 of the amended complaint have been deemed amended to allege the parties' states of residence <u>and</u> citizenship. *See*, order, doc. no. 47, to which no objection was filed.) If that conclusion is incorrect for any reason, this court would exercise supplemental jurisdiction over the state-law claims after dismissal of the federal claims.

within the Oklahoma DOC corrections system, was denied, and plaintiff was not credited with time served in Missouri.

Section 1983 Claim

Allbaugh argues the § 1983 claim is not plausible because it alleges no personal participation by him. A §1983 claim requires personal participation on the part of the defendant in the complained-of incident. <u>Grimsley v. MacKay</u>, 93 F.3d 676, 679 (10th Cir. 1996). Furthermore, supervisory status alone is insufficient to support liability under § 1983. *Id*. Here, the amended complaint alleges no personal participation by Allbaugh in the calculation of plaintiff's time to be served in Oklahoma. Nor does the amended complaint allege personal participation by Allbaugh in any of the other events which could potentially give rise to liability under § 1983.

The § 1983 claim against Allbaugh will be dismissed without prejudice under Rule 12(b)(6) for lack of allegations of personal participation.[12]

False Imprisonment Claim[13]

Allbaugh, a state employee as Director of ODOC, asserts immunity under the Oklahoma Governmental Tort Claims Act (OGTCA) as a defense to the false imprisonment claim.

As set out in the OGTCA, Oklahoma has not waived its sovereign immunity to suit with respect to claims against state employees acting within the scope of their

---

[12] This order does not address Allbaugh's qualified immunity because Allbaugh did not raise that defense until he filed his reply brief. As a result, plaintiff has not had an opportunity to carry his burden in response to those arguments. (Allbaugh raised qualified immunity in his reply brief after <u>plaintiff</u> raised qualified immunity in the response brief.)

[13] Negligence is not alleged against Allbaugh.

10

employment.[14]  The OGTCA defines "scope of employment" to mean "performance by an employee acting in good faith within the duties of the employee's office or employment…."  51 O.S. Supp. 2019 § 152(12).

In addition, § 155 of the OGTA lists specific matters as to which Oklahoma and its political subdivisions shall not be found liable. Subsection 25 of § 155 provides that Oklahoma and its political subdivisions shall not be liable for claims resulting from "Provision, equipping, operation or maintenance of any prison, jail or correctional facility…."   While subsection 25 is directed at the state and its political subdivisions, the fact that the state has not waived its immunity with respect to operation of correctional facilities strongly indicates the state has not waived the immunity of its state employees for conduct related to the operation of correctional facilities. Moreover, in Medina v. State of Oklahoma, 871 P.2d 1379 (1993), the Court gave § 155(25), then appearing at § 155(23), a broad interpretation.  The Court found that this subsection reveals an intent to withhold the waiver of immunity for any loss or injury, whether to an inmate or other person, "resulting from the operational level acts required to furnish the services of a penal institution" including services related to "the release of an inmate." Id. at 1384, n.13 (emphasis added).

The alleged conduct of Allbaugh is conduct within the scope of his employment as Director of the Oklahoma DOC.  It is conduct integral to prison operations, which includes conduct related to the release of an inmate.  The false imprisonment claim alleges no conduct on the part of Allbaugh which was not in good faith or which otherwise falls outside the scope of his employment for the state.

---

[14]51 O.S. 2011 §152.1 (state adopts doctrine of sovereign immunity; "The state, its political subdivisions, and all their employees acting within the scope of their employment…shall be immune from liability for torts;"  "immunity waived only to extent and in the manner provided in this act"; § 153(C) ("In no instance … shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant").

Allbaugh will be dismissed without prejudice under Rule 12(b)(1) based on his immunity under the OGTCA.

(2). <u>Mike Waters, Sheriff of Pawnee County, Oklahoma</u>

The amended complaint alleges that Waters, acting as an agent for the Oklahoma DOC, "transported Plaintiff to Douglas County, Missouri on temporary status pursuant to the Interstate Agreement on Detainers after receiving this notice [notice of the charges pending in Missouri] from Douglas County Missouri." Doc. no. 28, p. 7, ¶i. Although plaintiff's response brief indicates he relies on Waters' transport of plaintiff to Missouri as part of plaintiff's state-law claim against Waters, nothing in the amended complaint alleges or suggests that transporting plaintiff from Oklahoma to Missouri was a violation of the IAD, which is the basis of plaintiff's §1983 claims. Indeed, per the allegation quoted above, Waters transported plaintiff to Missouri "pursuant to" the IAD. Thus, the focus of the § 1983 claim is not Waters' transport of plaintiff to Missouri but Waters' alleged failure to return plaintiff to Oklahoma from Missouri in violation of the IAD. Plaintiff's response brief confirms this interpretation of the amended complaint, stating as follows with respect to the §1983 claim: "Plaintiff's argument is that Defendant Waters' involvement in failing to return the Plaintiff to his institution violated Plaintiff's rights because under the Interstate Agreement on Detainers[,] Defendant Waters still had custody of the Plaintiff while he was in the temporary confinement of Missouri." Doc. no. 40, p. 4.

Thus, relevant allegations with respect to the claims against Waters include that Waters "never sought to have the Plaintiff returned to Pawnee County Jail or to Oklahoma DOC." Doc. no. 28, p. 9, ¶ v. Plaintiff alleges that Waters had a duty to retrieve plaintiff from Missouri, because "Waters is … the Sheriff of Pawnee County and [as part of] the official nature of his daily duties he is responsible for prisoners in his custody and care and the transportation and return thereof pursuant to writ,

detainers, and returning individuals from the custody of other states and any other action requiring transportation of a prisoner in custody." Doc. no. 28, p. 3, ¶ 8.

Section 1983 Claim

As stated above, the § 1983 claim is based on an alleged violation of plaintiff's rights under the IAD due to Waters' failure to return plaintiff to Oklahoma. Waters asserts qualified immunity as a defense to this claim.

When qualified immunity is raised at the Rule 12(b)(6) stage, it is the defendant's conduct as alleged in the complaint that is scrutinized. *See*, Doe v. Woodard, 912 F.3d 1278, 1288 (10th Cir. 2019), citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Thus, it is the pleadings, not the evidence or the actual facts, which determine the issue. When a defendant asserts qualified immunity at the pleadings stage, plaintiff is then given an opportunity to identify facts already alleged or to be alleged, which show 1) that defendant's conduct violated the law (the first step of the qualified immunity analysis), and 2) that the law in question was clearly established when the alleged violation occurred (the second step of the qualified immunity analysis).[15] Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). Unless plaintiff makes the required showing at both steps, the defendant prevails on his qualified immunity defense. *Id*.

With regard to the first step of the analysis, plaintiff asserts Waters had a duty to obtain plaintiff's return from Missouri under Article V of the IAD. Article V provides that a prisoner sent to a receiving state is then in the "temporary custody" of the receiving state, and that the receiving state's temporary custody is only for purposes of permitting prosecution on the charge in the receiving state. Article V(e) provides that the prisoner shall be returned to the sending state "[a]t the earliest

---

[15] Plaintiff has been afforded this opportunity, as he has filed a response brief arguing the § 1983 claim should not be dismissed based on qualified immunity or otherwise.

possible time." Article V(g) provides that for all purposes other than that for which temporary custody is exercised, the prisoner shall be deemed to remain in the custody of the jurisdiction of the sending state.

Accordingly, based on Article V of the IAD, plaintiff argues that Waters had an ongoing duty to transport plaintiff back to Oklahoma at the conclusion of proceedings in Missouri. However, no such duty on the part of Waters as Sheriff of Pawnee County is explicitly or implicitly described in Article V. *And* see *generally*, State of New York by Coughlin v. Poe, 835 F. Supp. 585 (E.D. Okla. 1993) (under Article V of the IAD, Oklahoma was required to return Grasso to New York for service of his New York sentence prior to the execution of his Oklahoma death sentence, at 591; court held that under the IAD, the receiving state [here, Missouri not Oklahoma] had an obligation to return the prisoner).[16]

In addition to relying on Article V of the IAD, plaintiff relies on a sheriff's general duty to transport prisoners. But that is an insufficient basis for asserting that Waters had a duty to cross state lines to retrieve a prisoner transferred into the temporary custody of another state for purposes of a criminal proceeding in that state.

In short, the amended complaint includes no allegations which, if proven, would show that Water's alleged conduct violated the IAD. Accordingly, plaintiff has not carried his burden at the first step of the qualified immunity analysis.

---

[16] Grasso was serving a sentence in New York when Oklahoma sought to bring him to trial in Oklahoma. After New York delivered Grasso to Oklahoma, Grasso was tried in Oklahoma and received the death penalty. Following various communications between the states, New York informed Oklahoma that New York had the right to custody and jurisdiction over Grasso, which Oklahoma disputed. New York brought a declaratory judgment action to determine the states' rights and obligations under Article V of the IAD. The court construed the IAD in favor of New York, concluding that Oklahoma, as the receiving state, had an obligation to return Grasso to New York.

As for plaintiff's burden at the second step, plaintiff relies on the language of the IAD to show clearly established law. The IAD, as indicated by the discussion above, includes no language that places a duty on the sheriff of the sending state to retrieve a prisoner from the receiving state. Other than the IAD, plaintiff cites no other law or decisions to establish Waters' argued-for duty under the IAD. Plaintiff concedes that he can cite no decisional law (much less any clearly established law) to support his § 1983 claim against Waters. *See*, doc. no. 40, p. 8 ("This particular case is a case without precedent in the 10th Circuit or United States Supreme Court"; "This is a case of first impression"; "lack of authority involving similar fact patterns should not be considered or weighed against the Plaintiff"). Plaintiff has not carried his burden at the second step of the analysis, which requires him to cite clearly established law putting Waters on notice that his alleged conduct was a violation of the IAD.

Plaintiff has carried his burden at neither step of the analysis. Waters is entitled to qualified immunity with respect to the § 1983 claim, which will be dismissed without prejudice under Rule 12(b)(6).

<u>False Imprisonment Claim</u>[17]

Waters, as a sheriff of an Oklahoma county, asserts immunity under the OGTCA as a defense to the false imprisonment claim. The OGTCA preserves the immunity of the State of Oklahoma and its political subdivisions, as well as the immunity of employees of Oklahoma's political subdivisions,[18] so long as such employees act within the scope of their employment. 51 O.S. §§ 152.1, 153(C). The amended complaint alleges no conduct on the part of Waters which was not in good

---

[17] Negligence is not alleged against Waters.

[18] By definition, counties are political subdivisions of the state. 51 O.S. Supp. 2019 §152(11)(c). As sheriff, Waters is an employee of Pawnee County, a political subdivision of the state.

faith or which otherwise falls outside the scope of his employment for a political subdivision of the state. The false imprisonment claim alleged against Waters will be dismissed without prejudice under Rule 12(b)(1) based on Waters' immunity under the OGTCA.

(3). <u>Anne Precythe, Director of Missouri DOC</u>

<u>Section 1983, False Imprisonment, Negligence Claims</u>

Precythe is alleged to be a resident and citizen of Missouri.[19]   Precythe moves for dismissal of the claims against her on the ground that this court does not have personal jurisdiction.   Plaintiff responds by arguing that Precythe directed her activities toward Oklahoma by knowingly detaining an Oklahoma prisoner and preventing him from returning to the State of Oklahoma.   The amended complaint, however, alleges no specific actions by Precythe. Moreover, plaintiff cites no authority for the proposition that personal jurisdiction can be established over Precythe based an alleged failure by the Missouri DOC to return plaintiff to Oklahoma. *See*, <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1218-1221 (10th Cir. 2006) (no personal jurisdiction in the United States District Court for the District of New Mexico, with respect to official capacity claims alleged against Virginia corrections officials; court stated the same result would apply to any individual capacity claims against the Virginia corrections officials, had any such claims been alleged, at 1218, n.9; Virginia defendants lacked sufficient contacts with New Mexico to permit a New Mexico court to exercise personal jurisdiction over them).[20]

No allegations support personal jurisdiction over Precythe, and plaintiff has identified no evidence to suggest that this court has personal jurisdiction over

---

[19] *See*, doc. no. 47, not objected to.

[20] The New Mexico long-arm statute (like the Oklahoma statute) permits personal jurisdiction coextensive with constitutional limitations of the Due Process Clause. *Id.* at 1217.

Precythe.  Accordingly, the claims alleged against Precythe are subject to dismissal without prejudice under Rule 12(b)(2).

The court stops short of dismissing the claims against Precythe at this time because <u>Trujillo</u> indicates this court is obliged to consider transfer of the claims alleged against Precythe to a United States District Court sitting in Missouri, where such claims could have been brought.  *Id.* at 1222-23, and n.15 (remanded because district court failed to consider whether claims against Virginia corrections officials should have been transferred rather than dismissed; district court must consider transfer even when no motion to transfer is filed, citing <u>Haugh v. Booker</u>, 210 F.3d 1147, 1150 at n.4 (10th Cir. 2000), which states a motion to transfer is not necessary in view of the mandatory language of § 1631).[21]

Factors to consider with respect to whether transfer would be in the interest of justice include findings:  1) that the new action would be time-barred, 2) that the claims likely have merit, and 3) that the original action was filed in good faith and not after plaintiff should have realized there was no personal jurisdiction.  *Id.* at 1223, n.16.  Nothing suggests anything other than good faith on the part of Mr. Ballandby in bringing this action in Oklahoma.  Evaluation of the other factors, however, is not as clear-cut.  This court expresses no opinion as to whether the claims against Precythe might be time-barred in the event of a dismissal for lack of personal jurisdiction, but it notes possible timeliness issues.[22]  As for the merits, there is no

---

[21] A district court is permitted to transfer fewer than all the claims if it indicates its intention to create two separate actions.  <u>United States v. County of Cook, Illinois</u>, 170 F.3d 1084, 1088 (Fed. Cir. 1999) notes disagreement among the circuits in this regard but states this is the rule in the Tenth Circuit, citing <u>Federal Deposit Ins. Corp. v. McGlamery</u>, 74 F.3d 218, 222 (10th Cir. 1996). <u>McGlamery</u> concluded the transfer order entered in that case should be construed as severing the claims for transfer under Rule 21, creating two separate actions one of which was transferred.

[22] A two-year limitations period may apply to the false imprisonment claim.  *See*, MO ST 516.140. Some events potentially involving the Missouri DOC allegedly occurred around two years ago.

indication that plaintiff can allege facts to show personal participation on the part of Precythe for purposes of the §1983 claim against her. But tort claims, unlike § 1983 claims, are ordinarily permitted to rest on theories of liability such as *respondeat superior*. Also relevant to the merits of the tort claims against Precythe would be any immunity Precythe is entitled to as a Missouri state employee. Thus, while a peek at the merits is permitted for present purposes, Haugh, 210 F.3d at 1150, that peek merely reveals that an answer to the merits-question is not obvious.

Moreover, the four factors discussed above do not exclude other considerations. In light of the various types of immunities asserted in response to plaintiff's claims, plaintiff may decide not to pursue his claims or may decide to pursue them in state court. Additionally, in this case (unlike Trujillo, in which plaintiff was an inmate who appeared *pro se*), plaintiff has counsel and is therefore in a good position to assess whether he prefers transfer and whether transfer, from his point of view, would be in the interest of justice.

In these circumstances the most appropriate course is not to decide the transfer issue *sua sponte* but to give plaintiff an opportunity to move for transfer of the claims alleged against Precythe if plaintiff wishes to do so. Accordingly, the claims against Precythe will not be dismissed for lack of personal jurisdiction at this time. *See*, "Conclusion" portion of this order.

(4). Eric Schmitt, Missouri Attorney General

Section 1983, False Imprisonment, Negligence Claims

Schmitt is alleged to be a resident and citizen of Missouri.[23] Like Precythe, Schmitt moves for dismissal of all claims alleged against him on the ground that this court does not have personal jurisdiction. Plaintiff responds by arguing that Schmitt

---

*See*, doc. no. 28, ¶¶ 21-22. Other limitations-related issues might include tolling or the effect of Missouri's savings statute.

[23] *See*, doc. no. 47, not objected to.

directed his activities toward Oklahoma by knowingly detaining an Oklahoma prisoner and preventing him from returning to the State of Oklahoma. Specifically, plaintiff argues that "Defendant Schmitt directly refused to admit error when Plaintiff sought a Writ of Habeas Corpus and return [of] the Plaintiff to Oklahoma. Thus, Defendant Schmitt had direct dealings with an Oklahoma prisoner whom was still in the custody and under the authority of the State of Oklahoma." Doc. no. 42, p. 3 of 9.

In other words, plaintiff contends that Schmitt directed his activities toward Oklahoma because the Missouri Attorney General (representing Fulton Reception and Diagnostic Center where plaintiff was apparently being held), opposed relief in the habeas matter (Case No. 17CW-CV00934) which was brought by Mr. Ballandby to request a return to Oklahoma. The position taken by the Missouri Attorney General is evidenced by the response brief filed in that matter. Doc. no. 37-1. That response brief was filed by "Joshua D. Hawley, Attorney General," and was electronically signed by "Patrick J. Logan, Assistant Attorney General." Doc. no. 37-1, p. 7 of 7. Schmitt's name does not appear on that brief. Nor does Schmitt's name appear anywhere on the docket sheet. In addition, Schmitt submits documents showing he was not appointed Attorney General for the State of Missouri until January 3, 2019, which is after the date of the conduct relevant here. Doc. no. 37-2 (appointment papers).[24]

No allegations specify that Schmitt was the Attorney General on whose behalf the response brief was filed in the habeas matter, and public documents show that Schmitt was not the Attorney General at any time relevant to the claims against him. Accordingly, no allegations or evidence show or suggest that Schmitt directed any

---

[24]The court takes judicial notice of doc. no. 37-2, which is a matter of public record and not in dispute.

activities at the State of Oklahoma in the sense required for Oklahoma to have personal jurisdiction over him in this action. The court concludes that the claims alleged against Schmitt are subject to dismissal without prejudice under Rule 12(b)(2) for lack of personal jurisdiction.

In light of this conclusion, the court has considered whether the claims against Schmitt should be transferred under 28 U.S.C. § 1631 rather than dismissed. One of the factors relevant to that question is the merit of the claims. Given undisputed evidence showing Schmitt was not serving as Attorney General of the State of Missouri at any time relevant to the claims alleged against him, the claims against Schmitt have no merit and transfer would be futile.[25] Accordingly, it is not necessary to give plaintiff an opportunity to state his view with respect to transfer before determining, as the court now does, that transfer of the claims alleged against Schmitt is not in the interest of justice for purposes of 28 U.S.C. § 1631.

The claims alleged against Schmitt will be dismissed without prejudice under Rule 12(b)(2) for lack of personal jurisdiction.

(5). Christopher Wade, Prosecutor of Douglas County, Missouri

Wade is alleged to be a resident and citizen of Missouri.[26] However, unlike the other Missouri defendants, Wade does not argue that this court lacks personal jurisdiction.

---

[25]The court notes plaintiff's request (embedded in his response brief and not the subject of a separate motion) asking the court to substitute the correct attorney general as a party in this action. Such a substitution is only potentially available where an attorney general is sued in his official capacity, which is not the case here. Nor has plaintiff made any arguments to suggest that this court would have personal jurisdiction over another attorney general or assistant attorney general sued in his or her individual capacity. The requested substitution is denied.

[26] *See*, doc. no. 47, not objected to.

The amended complaint alleges that Wade, as the prosecuting attorney on the Missouri criminal charge brought against the plaintiff, never filed a release of the writ of habeas corpus ad prosequendum (the writ which brought plaintiff to Missouri from Oklahoma), and that Wade intended to confine plaintiff in Missouri and not return him to the state where Wade was required to return him. In other words, plaintiff alleges Wade "failed to see that Plaintiff was returned to the sending state, Oklahoma[,] which resulted in the Plaintiff serving more than one-hundred and fifty (150) days past his release date." Doc. no. 28, p. 12, ¶ ww.

Section 1983, False Imprisonment, Negligence

Wade asserts prosecutorial immunity, arguing that decisions made by a prosecutor about extradition, detainers, and transportation, come within the scope of the prosecutorial function for which immunity is absolute.[27] In response, plaintiff argues the claims against Wade rest on Wade's failure to return plaintiff to Oklahoma and not on the initiation or pursuit of a criminal charge so that these claims do not come within prosecutorial immunity.

In Burrows v. Cherokee County Sheriff's Office, 38 Fed. Appx. 504 (10th Cir. 2002) (unpublished) the Court of Appeals affirmed the district court's dismissal of § 1983 claims alleged against the Cherokee County District Attorney. The Court of Appeals noted it is well established that prosecutors are absolutely immune from suit for activities intimately associated with the judicial phase of the criminal process. Id. at 506, citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976). In Burrows, the plaintiff complained that the district attorney's actions in seeking an "Order to Transport" were improper in light of the previous dismissal of the criminal proceedings against Burrows. Id. The Court of Appeals stated, "it is apparent from

---

[27] The court does not address qualified immunity because that defense is raised in plaintiff's response brief but is not raised by Wade.

the pleadings that the district attorney's actions were undertaken as a part of his official responsibilities," and that "nothing in the pleadings…indicates the prosecutor stepped outside of his prosecutorial role in pursuing the 'Order to Transport.' Thus, he is entitled to absolute prosecutorial immunity." *Id.*

Although <u>Burrows</u> involved an allegedly wrongful decision <u>to</u> transport rather than an allegedly wrongful decision <u>not to</u> transport or otherwise return plaintiff to Oklahoma, <u>Burrows</u> indicates that prosecutorial immunity extends to these types of decisions. Furthermore, prosecutorial immunity is recognized under Missouri law to the same extent that it is recognized under federal law. *See*, <u>Carden v. George</u>, 291 S.W. 3d 852, 854 (Mo. App. S.D. 2009) (prosecutor's immunity from civil liability is absolute, quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 424 (1976)).

*And see generally*, <u>Turner v. Godinez</u>, 693 Fed. Appx. 449 (7th Cir. 2017) (state prosecutors immune to suit where prisoner brought § 1983 claim contending he should have received 911 days' credit for the time he was detained before sentencing); <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1069 (9th Cir. 2009) (state attorney general entitled to prosecutorial immunity with respect to § 1983 claim which alleged attorney general could have effectuated plaintiff's post-conviction release, where attorney general's office had handled an appeal in another case which resulted in the invalidation of the penal code provision pursuant to which plaintiff was incarcerated; collecting cases in which prosecutors were entitled to prosecutorial immunity for post-conviction duties).

The court concludes that Wade is entitled to prosecutorial immunity as a defense to the claims alleged against him. The claims against Wade will be dismissed without prejudice under Rule 12(b)(6) based on Wade's prosecutorial immunity.

## VI.  <u>Conclusion</u>

After careful consideration, defendants' motions to dismiss are **GRANTED** with the exception that Precythe's motion is **GRANTED IN PART** and

**RESERVED IN PART**. All defendants other than Precythe are hereby **DISMISSED** from this action. All dismissals are without prejudice.[28] Leave to amend is not given *sua sponte.*[29]

(1).    Joe Allbaugh, Director of the Oklahoma Department of Corrections. Doc. no. 36: **GRANTED**. The § 1983 claim is **DISMISSED** under Rule 12(b)(6) (no allegations of personal participation). The false imprisonment claim is **DISMISSED** under Rule 12(b)(1) (immunity under the Oklahoma Governmental Tort Claims Act).

(2).    Mike Waters, Sheriff of Pawnee County, Oklahoma. Doc. no. 35: **GRANTED**. The § 1983 claim is **DISMISSED** under Rule 12(b)(6) (qualified immunity). The false imprisonment claim is **DISMISSED** under Rule 12(b)(1) (immunity under the Oklahoma Governmental Tort Claims Act).

(3).    Anne L. Precythe, Director of the Missouri Department of Corrections. Doc. no. 38: **GRANTED IN PART**. The claims against Precythe are **SUBJECT TO DISMISSAL** under Rule 12(b)(2) (lack of personal jurisdiction), but dismissal of these claims is **RESERVED** to give plaintiff an opportunity, if he wishes to do so, to move for transfer of these claims under 28 U.S.C. §1631.

If plaintiff does not move to transfer under § 1631, the court will presume plaintiff does not desire transfer or cannot show transfer is in the interest of justice, in which case the claims against Precythe will then be dismissed under Rule 12(b)(2).

---

[28] All dismissals are without prejudice because they are based on the allegations as they stand and because dismissals based on sovereign immunity (the OGTCA dismissals) must be without prejudice. Rural Water Sewer & Solid Waste Mgmt., Dist. 1, Logan County, Oklahoma v. City of Guthrie, 654 F.3d 1058, 1069, n.9 (10th Cir. 2011).

[29] *See*, Doe v. Heil, 533 Fed. Appx. 831, 846-47 (10th Cir. 2013) (upholding district court's dismissal with prejudice, where dismissal was entered without giving plaintiff an opportunity to amend *sua sponte*; plaintiff was represented by counsel and had already amended once), unpublished.

If plaintiff moves to transfer under § 1631, any such motion: i) must be five pages or less; ii) must state whether plaintiff objects to severance of this action so that two actions are created, with only the claims alleged against Precythe to be transferred; iii) must identify to which specific United States District Court, sitting in Missouri, plaintiff seeks transfer based on venue considerations; iv) must address all factors plaintiff relies on to show that a transfer is in the interest of justice; and v) must be filed within fourteen days of the date of this order. Any response briefs must be five pages or less and are due within fourteen days of the filing of plaintiff's motion. No reply brief is permitted at this time.

(4). Eric Schmitt, Missouri Attorney General. Doc. no. 37: **GRANTED**. The claims against Schmitt are **DISMISSED** under Rule 12(b)(2) (lack of personal jurisdiction).

(5). Christopher Wade, prosecuting attorney for Douglas County, Missouri. Doc. no. 31: **GRANTED**. The claims against Wade are **DISMISSED** under Rule 12(b)(6) (prosecutorial immunity).

IT IS SO ORDERED this 28th day of May, 2019.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0123p006.docx

24